# Exhibit 1

SIMON & SIMON, LLP
Jeffrey Simon, Esq. (State Bar No. 146658)
David A. Simon, Esq. (State Bar No. 172307)
4100 Newport Place, Suite 750
Newport Beach, California 92660
(949) 585-5150
(949) 585-5151 FAX

Attorneys for Plaintiff
Smile Brands Inc.

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/09/2023 3:38 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

SMILE BRANDS INC., a Washington
Corporation,

          Plaintiff,

vs.

AVATURE LIMITED, a Delaware Corporation;
and DOES 1 through 50, inclusive,

          Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 23STCV27576

COMPLAINT FOR:

1. BREACH OF CONTRACT;
2. BREACH OF WARRANTY;
3. FRAUD/INTENTIONAL MISREPRESENTATION; and
4. DECLARATORY RELIEF.

Plaintiff alleges as follows:

## PARTIES

1.     Plaintiff SMILE BRANDS INC. is a Washington Corporation (hereinafter "SBI" or "Plaintiff") at all relevant times alleged herein headquartered in the County of Orange, State of California with its principal place of business in Irvine, California.

2.     SBI is a provider of support services to general and multi-specialty dental groups. SBI provides comprehensive business support services, facilities, personnel, staffing, and equipment through agreements with such affiliated dental groups. SBI provides business support services to dentists and hygienists practicing nationally.

3.      Plaintiff is informed and believes, and thereon alleges, that AVATURE LIMITED, a Delaware Corporation, (hereinafter "AVATURE" or "Defendant") is and at all relevant times alleged herein was doing business in the County of Orange, State of California.

4.      Plaintiff is informed and believes, and thereon alleges, that each Defendant is, at all relevant times was, the agent and employee of each co-defendant, and, in committing the alleged acts, was acting in the scope of its agency or employment, and with the permission and consent of the other co-defendants.

5.      Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 50, inclusive, are individuals, partnerships, corporations, or other entities, the true names of which are not known to Plaintiff at this time. Plaintiff sues all those Defendants by these fictitious names. Leave of court will be sought to insert the names when they are ascertained. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 50, inclusive, performed, participated in, and/or abetted the acts alleged herein and are liable to Plaintiff for damages and relief sought.

6.      Pursuant to Section 17.1 of the Agreement which is the subject of this action, jurisdiction and venue is stipulated and agreed to be in the Los Angeles County Superior Court. Further, as part of the Agreement, Defendants, and each of them, waived any objection as to venue.

**GENERAL ALLEGATIONS**

7.      On or about December 1, 2016, SBI and AVATURE entered into an agreement for Avature Software Services (SaaS), a collection of data processing services which are accessed through the Internet entitled Master Service Agreement (hereinafter "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit "A". The Agreement was amended on September 29, 2022, in the First Amendment to the Master Service Agreement ("First Amendment"). A true and correct copy of the First Amendment is attached hereto as Exhibit "B". The Agreement and the Amendment are sometimes collectively referred to as the Agreement herein.

8.     Under the Agreement, the services and fees are provided as set forth in an order with the operative Order being Order Number A13164 (the "Order") for a three (3) year term beginning September 1, 2022, and concluding on August 31, 2025, with annual recurring fee. The Order is marked "Confidential," and therefore, a true and correct copy of the Order is not attached hereto.

9.     SBI experienced continuous problems, issues and breaches with Defendant's services which were consistently inadequate and incorrect and caused SBI significant amounts of time and money.

10.    Despite SBI having expended significant resources towards working with various of Defendant's team members to fully realize the software services that are described in the Order, Defendant failed to perform to the promised level of functionality as required by the Order and the Agreement. As such, on September 29, 2023, SBI formally presented a summary of the material issues experienced by SBI with regard to Defendant's services. At said time, SBI put Defendant on notice that if such material and substantial issues were not cured within the time permitted under the Agreement (30 days), SBI would terminate the Agreement and Order as permitted under the Agreement.

11.    Defendant did not cure or rectify the issues and cumulative failures of its non-conforming services within 30 days, and as such, on October 31, 2023, SBI terminated the Agreement and Order in accordance with Sections 8.3, 11.1 and 7.2 of Exhibit B of the Agreement.

12.    On November 7, 2023, Defendant purportedly rejected the termination and demanded payment of $281,267.47, with no offset for any of its services which did not comply with its contractual obligations and warranties under the Agreement. Said amount of $281,267.47 has been disputed in good faith by SBI pursuant to Section 7.2 of the Agreement.

13.    In addition to the foregoing, there was a high level of turnover rate with Defendant which further created problems.  The left hand never knew what the right hand was doing at Defendant as numerous people left and fewer people were assigned to the SBI account and implementation of the Agreement.  Defendant's team became extremely depleted such that

1    they were not paying attention to the SBI issues and due to the turnover rates and depletion of

2    support resources knowledge of the SBI Agreement did not transfer from one employee to the

3    other.

4        14.    SBI terminated the Agreement for cause and as permitted in the Agreement and

5    thus no penalty or fee is owed to Defendant.  In addition, SBI contends that Defendant is liable

6    for significant damages incurred by SBI as a result of Defendant's continuous material

7    breaches of contract, misrepresentations and failures to perform.  Defendant is liable for

8    refunds to SBI as set forth in Section 8.5 of the Agreement, as well.  SBI's termination of

9    Defendant may likely greatly mitigated the damages it would have prospectively suffered due

10   to Defendant's breaches.

11                              **<u>FIRST CAUSE OF ACTION</u>**

12                                **(Breach of Contract)**

13                              **(As Against All Defendants)**

14       15.    SBI refers to and incorporates, as though fully set forth herein, Paragraphs 1

15   through 14, in their entirety.

16       16.    As set forth hereinabove, on December 1, 2016, AVATURE and SBI entered

17   into the Agreement for services. Among other things, Defendant agreed to provide the

18   following application services as stated in the Order in exchange for an annual recurring rate:

19   1)  to integrate e-signatures for digital documents; 2) to provide high-volume email marketing

20   including all features up to 300,000 emails; 3) to provide integration for job feeds with the

21   ability to adjust, free of failures; 4) to provide integration of SMS/text messages to be handled

22   by Defendant; 5) to provide integrations: job feeds; 6) to provide Avature hiring manager –

23   Core Edition; 7) to provide its journal feed capability to create its own separate data warehouse

24   for reporting; and 8) to provide a system consistent with Good Industry Practice and

25   functionality materially and substantially in accordance with the contract documentation. Each

26   of the foregoing services was and is non-conforming and/or defective, was not implemented,

27   did not function and/or simply was not provided by Defendant as agreed in the Agreement

28   and/or the Order.

17. Notably, as SBI was paying an annual recurring rate for each of the services listed in the preceding Paragraph, each was and is substantial and material to the Agreement.

18. Pursuant to the Agreement and Section 11.1 thereof, Defendant represented and warranted to provide all services in a professional manner consistent with Good Industry Practice and warranting the functionality to be materially and substantially in accordance with the contract documentation.

19. As set forth herein, Defendant breached the Agreement and/or the Order by, among other things, failing to provide the agreed upon services and in its representations and warranties to SBI. Defendant further breached the Agreement by failing to provide, adhere to, and/or exercise commercially reasonable efforts to respond to defective and non-conforming services as required by Exhibit B attached to the Agreement.

20. Under Sections 8.5 and 11.1 of the Agreement, SBI is entitled to a refund for services not yet rendered under the Order and/or the non-conforming services which Defendant has failed and refused to refund to date.

21. SBI has performed all of its obligations under the Agreement.

22. As a direct and proximate result of Defendant's breaches, SBI has been damaged in an amount to be proven at trial and which includes, but is not limited to, loss of income and revenue, business interruption, costs of substitute services and other economic and non-economic losses and damages. SBI has been further damages in its efforts to recruit employees and is overall business as a result of Defendant's failure to provide and/or cure its defective services and breaches of the Agreement.

23. SBI is entitled to attorneys' fees and costs incurred in connection with the enforcement of the Agreement in accordance with the terms specified in said Agreement (See e.g. Section 7.2). SBI has been required to retain the services of attorneys and incur costs to prosecute the instant action and is therefore entitled to its costs and attorneys' fees.

//

//

//

## SECOND CAUSE OF ACTION

### Breach of Warranties

### (As Against All Defendants)

24.    SBI refers to and incorporates, as though fully set forth herein, Paragraphs 1 through 23, in their entirety.

25.    Defendant warranted to SBI its goods and services would be conforming, free of defect and able to properly function or to be properly implemented. Section 11.1 of Agreement provides the services would be provided in a professional manner consistent with Good Industry Practice and warrants the functionality to be materially and substantially in accordance with the contract documentation.

26.    The goods and services set forth in Paragraph 16 hereinabove are and were non-conforming and/or defective, were not implemented, did not function and/or simply was not provided by Defendant as warranted and/or represented.

27.    Defendant breached the warranties in the Agreement as well as the warranties of merchantability, fitness for use, and quality in that the goods and services were not, and at no time herein mentioned was of merchantable quality or functionality, and was not fit for the purpose intended, and was neither of sufficient quality nor conformance with industry standards.

28.    SBI made several demands for Defendant to cure and/or rectify the defective, non-conforming goods and services, including but not limited to those set forth above.  Defendant has failed and refused (and has even advised it is incapable of curing certain defects) within the time permitted in the Agreement.  As such, under Section 11.1 of the Agreement, on November 7, 2023, SBI notified Defendant of its election to terminate the Agreement and that Defendant is required to refund SBI for the non-conforming goods and services.

29.    As a direct and proximate result of Defendant's breach of warranty and the defects and deficiencies herein described, SBI has been damaged in that it has been and will be required to incur expenses to correct, and replace the defects and non-conforming goods and services, as well as SBI has been damaged in an amount to be proven at trial and which includes, but is not limited to, loss of income and revenue, business interruption, costs of substitute services and

other economic and non-economic losses and damages. SBI has been further damaged in its efforts to recruit employees and its overall business as a result of Defendant's failure to provide and/or cure its defective goods and services and breaches of the Agreement.

30.    SBI provided Defendant with notice of the defective and non-conforming goods and services prior to filing this action.

### THIRD CAUSE OF ACTION

**(Fraud/Intentional Misrepresentation)**

**(As Against All Defendants)**

31.    SBI refers to and incorporates, as though fully set forth herein, Paragraphs 1 through 30, in their entirety.

32.    In or about August of 2022, and continuing thereafter, Defendant by and through its employees and authorized agents made numerous oral and written representations surrounding Defendant's ability to function, perform and provide an Applicant Tracking System ("ATS"), which included , but is not limited to providing SBI with a high-performance and highly automated and secure hosting product that would meet the highest level of industry standards such that SBI's legacy systems would become obsolete and their hiring capabilities and talent would drastically increase.

33.    The representations made by Defendant were in fact false.  The true facts were that Defendant was not able to function as an ATS nor did it have ATS capabilities. Defendant's misrepresentations include, but are not limited to the following: instead of providing automated work flow; SBI must manually input forms and such inefficiency caused an extreme bottleneck or back log on numerus issues such as job posting being improperly applied to job boards with distorted information; Defendant's search engine optimization was unable to refresh, thereby displaying aged postings and extreme hinderance to SBI's business; Defendant's email blasts were not performed through an automated system which again caused SBI to manually input and/or find legacy software causing a loss of business and candidates; the SMS/text function completely malfunctioned because Defendant made revisions to their contract with its third party

1   subcontractor and in turn disconnected SBI's entire SMS/text service leaving SBI unable to

2   perform mass texting for over two (2) months.

3       34.    When Defendant made these representations, omissions and/or concealments to

4   SBI, Defendant knew them to be false, but made them with the intent to defraud, conceal and

5   deceive SBI.  SBI reasonably relied to its detriment on Defendant's representations.  Such

6   reliance was reasonable and without such false statements, SBI would not have entered into the

7   Order extending the Agreement by a three (3) year term.

8       35.    At the time Defendant made these representations, and at the time SBI took the

9   actions alleged herein, SBI was ignorant of the falsity of Defendant's representations and

10  believed them to be true.  In reliance on these representations and concealments, SBI was

11  deceived, defrauded, and induced to enter into a three (3) year extension of the Agreement and/or

12  the Order.  If SBI knew of the fraudulent representations and/or omissions, it would not have

13  entered said extension of the Agreement and/or Order.

14      36.    As a proximate result of Defendant's fraud and deceit and the facts herein alleged,

15  SBI has been damaged and will continue to suffer damages in an amount to be proven at the time

16  of trial but in no event less than the jurisdictional limits of this Court. Among other things, SBI

17  has incurred quantifiable cost increases for having to do work manually when automation was

18  promised by Defendant, and SBI has lost significant revenue as a result of a loss of candidates

19  and hires which has even caused the closure of dental offices.

20      37.    The aforementioned conduct of Defendant was an intentional misrepresentation,

21  deceit, or concealment of a material facts known to Defendant with the intention on the part of

22  Defendant to deprive SBI of monies or legal rights or otherwise cause injury and was despicable

23  conduct that subjected SBI to a cruel and unjust hardship in conscious disregard of SBI's rights,

24  so as to justify an award of exemplary and punitive damages.  SBI is further informed and

25  believes that Defendant's acts were done with knowledge of and under the direction of officials

26  who have power to bind Defendant, including Defendant itself, and were ratified, authorized

27  and/or performed by an officer, director or managing agent.

28  //

## **FOURTH CAUSE OF ACTION**

### **(Declaratory Relief)**

### **(As Against all Defendants)**

38.     SBI refers to and incorporates, as though fully set forth herein, Paragraphs 1 through 37, in their entirety.

39.     An actual, present controversy requiring resolution by the Court has arisen as to the rights and obligations of the parties, in that, among other things:

a)      SBI terminated the Agreement and the Order for cause and per Sections 8.3, 11.1 and 7.2 of Exhibit B of the Agreement;

b)      Defendant disputes the termination and seeks a penalty payment from SBI;

c)      Defendant is not contractually entitled to termination fees;

d)      The termination clauses are contradictory, vague, ambiguous, void, illusory, contrary to public policy and therefore unenforceable; and

e)      Pursuant to Sections 8.3, 11.1 and 7.2 of Exhibit B of the Agreement, SBI does not owe a termination fee based upon Defendant's breach and misrepresentations and is owed a refund.

40.     SBI submits the Agreement and Order has been terminated effective November 7, 2023, and that it is owed a refund for the defective, non-conforming services.

41.     Additionally, SBI alleges the purported termination clause(s) is void as against public policy, illusory and is unenforceable for several reasons.  A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under *Civil Code* Section 1671(b), if it is unreasonable and bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach and constitutes an unenforceable penalty.

42.     SBI contends the termination penalties are unenforceable.  SBI contends the termination clause is an invalid liquidated damages clause which is void and unenforceable as it violates public policy.  Defendant contends otherwise.

43.    An actual controversy exists between SBI and Defendant as detailed hereinabove.

44.    SBI desires a judicial determination as to the parties' respective rights and duties, and a Declaration of same under the Agreement and Order.

45.    A Judicial Declaration is necessary and appropriate under the circumstances in order that SBI and Defendant may ascertain their rights under the written obligations, if any.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

**As to the First and Second Causes of Action**:

1. For general and special damages according to proof at the time of trial;

2. For reasonable attorneys' fees;

**As to the Third Cause of Action:**

3. For general, consequential and special damages according to proof at the time of trial;

4. For compensatory damages according to proof at the time of trial but in no event less than the jurisdictional limits of this Court;

5. For exemplary and punitive damages;

**As to the Fourth Cause of Action:**

6. For judicial determination that:

    a)  SBI timely and properly terminated the Agreement and/or Order;

    b)  Defendant breached the Agreement and Order;

    c)  Defendant is not contractually entitled to termination fees;

    d)  The termination clauses are contradictory, vague, ambiguous, void, illusory, contrary to public policy and therefore unenforceable; and

    f)  SBI is entitled to a monetary refund.

7. That Defendant pay Plaintiff general damages in an amount to be proven at the time of trial;

8. That Defendant pay Plaintiff its actual damages;

//

**As to All Causes of Action:**

     9.  Interest at the highest legal rate;

    10. Attorneys' fees according to proof;

    11. Costs of suit incurred herein; and

    12. Such other relief as the Court deems just and proper.

Dated:  November 9, 2023          SIMON & SIMON, LLP

                             Jeffrey S. Simon, Esq.
                             Attorneys for Plaintiff Smile Brands Inc.

**EXHIBIT "A" [FILED UNDER SEAL]**

**EXHIBIT "B" [FILED UNDER SEAL]**